

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-7-1997

# USA v. Schwegel

Precedential or Non-Precedential:

Docket
97-1082

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation
"USA v. Schwegel" (1997). *1997 Decisions.* Paper 239.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/239

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 7, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1082

UNITED STATES OF AMERICA

v.

JOSEPH SCHWEGEL,
        Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(District Court No. 92-cr-00426-2)

Argued: August 11, 1997

Before: ALITO, LEWIS, and McKEE, Circuit Judges
(Opinion Filed: October 7, 1997)

        David L. McColgin, Esq. (argued)
        Elaine DeMasse, Esq.
        Maureen Kearney Rowley, Esq.
        DEFENDER ASSOCIATION OF
         PHILADELPHIA
        Federal Court Division
        Suite 800 - Lafayette Building
        437 Chestnut Street
        Philadelphia, Pennsylvania 19106-
         2414

        Attorneys for Appellant




        Michael R. Stiles
        United States Attorney

        Walter S. Batty, Jr.
        Assistant United States Attorney
        Chief of Appeals

        Ewald Zittlau (argued)
        Assistant United States Attorney
        Room 1250, 615 Chestnut Street
        Philadelphia, PA 19106

Attorneys for Appellee

OPINION OF THE COURT

PER CURIAM:

This appeal presents the question whether under 18
U.S.C. S3553(a)(4), as amended in 1994, a district court, in
imposing a term of imprisonment upon revocation of
supervised release, is required (in the absence of grounds
for departure) to impose a term within the range indicated
by U.S.S.G. S7B1.4 (Policy Statement). Prior to the 1994
amendment, we held that the sentencing ranges set out in
U.S.S.G. S7B1.4 were merely advisory. United States v.
Blackston, 940 F.2d 877, 892-93 (3d Cir. 1991). Since the
1994 amendment, all but one of the courts of appeals that
have addressed this question have reached the same
conclusion. In accordance with these decisions, we now
hold that, despite the 1994 amendment, the ranges set out
in U.S.S.G. S7B1.4 remain advisory and not binding.

Joseph Schwegel pled guilty and was convicted in 1993
for several drug-related offenses, and he was sentenced to
40 months of imprisonment followed by 60 months of
supervised release. After serving 31 months of
imprisonment, he was placed on supervised release, and it
is uncontested that he committed several violations of the
conditions of his release, including testing positive for
drugs.

2

Under U.S.S.G. S7B1.4, Schwegel's range of
imprisonment was six to twelve months, but the prosecutor
argued that this range was merely advisory and
recommended that the court impose a sentence of 60
months. (App. 37a-38a). Schwegel's attorney agreed that
the ranges set out in U.S.S.G. S7B1.4 were not binding, but
he urged the court to "consider a sentence more in line with
the guidelines," specifically, a sentence of"six months
incarceration, three months in an inpatient program,
something of that sort." (App. 33a-34a). The district court
judge stated that he did not think that six months would be
"enough to wean" Schwegel of his drug addiction, and the
judge therefore sentenced him to three years of
imprisonment followed by one year of supervised release.

On appeal, Schwegel argues that, contrary to the position
taken before the district court, the sentencing range set out
in U.S.S.G. S7B1.4 was mandatory and that the district
court committed plain error in imposing a sentence outside
that range. Schwegel contends that the plain meaning of

18 U.S.C. SS3553(a)(4)(B) and 3553(b) (1994) dictates acceptance of his argument. Section 3553(b) provides in pertinent part as follows:

> (b) Application of guidelines in imposing a sentence. The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. S3553(b). According to Schwegel, this provision requires a sentencing court (unless there is a basis for departure) to comply with any sentencing range "referred to" in 18 U.S.C. S3553(a)(4). And, Schwegel maintains, the ranges set out in U.S.S.G. S7B1.4 are "referred to" in 18 U.S.C. S3553(a)(4)(B), which was added in a 1994 amendment. Under this provision, a sentencing court is required to "consider," among other things

> (4) the kinds of sentence and the sentencing range established for- . . .

> (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code.

18 U.S.C. S3553(a)(4)(B). Since U.S.S.G. S7B1.4 is a policy statement that was issued pursuant to 28 U.S.C. S994(a)(3) and that sets out sentencing ranges for violation of supervised release, Schwegel argues, 18 U.S.C. S3553(a)(4)(B) refers to the sentencing ranges set out in U.S.S.G. S7B1.4, and those ranges, by virtue of 18 U.S.C. S3553(b), are binding.

We do not agree with Schwegel that the plain meaning of 18 U.S.C. S3553 requires us to accept his argument. Although Schwegel maintains, as previously noted, that 18 U.S.C. S3553(b) dictates that a sentencing court comply with any sentencing range "referred to in subsection(a)(4)," it is reasonable to read this provision more narrowly to mandate compliance with only those sentencing ranges set out in "guidelines," rather than advisory policy statements. Under 18 U.S.C. S3553(b), a sentencing court must impose a sentence "within the range, referred to in subsection (a)(4)

unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . .. ." 18 U.S.C. S3553(b) (emphasis added). Accordingly, it is reasonable to read the term "range" in 18 U.S.C. S3553(b) to mean a range set out in a guideline. Moreover, the heading of 18 U.S.C. S 3553(b), "Application of guidelines in imposing a sentence," also tends to support the view that this provision applies to ranges set out in guidelines as opposed to policy statements.

Schwegel contends that the term "guidelines" in 18 U.S.C. S3553(b) means "the entire system of the Federal Sentencing Guidelines, including policy statements." Appellant's Br. at 13. But while it is not inconceivable that Congress might have used the term "guidelines" in this sense, that is certainly not the term's plain meaning. Thus, in making this argument, Schwegel implicitly recognizes the

necessity of looking beyond the plain meaning of 18 U.S.C. S3553's text.

In United States v. Cohen, 99 F.3d 69 (2d Cir. 1996), the court seems to have held that the plain meaning of 18 U.S.C. S3553(b), far from supporting Schwegel's position, actually refutes it. Cohen appears to have held that the plain meaning of 18 U.S.C. S3553(b) is that only those sentencing ranges contained in guidelines are binding. Id. at 71. While we are reluctant to go that far, we are convinced that the plain meaning of 18 U.S.C. S3553 does not require us to adopt Schwegel's position.

Looking beyond the bare statutory language, we conclude that the sentencing ranges set out in U.S.S.G. S7B1.4 remain merely advisory. Under 28 U.S.C. S994(a)(3), the Sentencing Commission is required to issue guidelines or policy statements concerning revocation of supervised release. To comply with this requirement, the Commission promulgated Chapter Seven of the Guidelines Manual in 1990. As we explained in Blackston, 940 F.2d at 893:

> Realizing that events were proceeding rapidly, and that, lacking experience in the area, it needed additional time to consider the complex issues relating to revocation of probation and supervised release, the Sentencing Commission opted for advisory policy statements in order to maximize flexibility. See id. ("[T]he Commission anticipates that, because of its greater flexibility, the policy statement option will

provide better opportunities for evaluation by the courts and the Commission."). In issuing only advisory policy statements, the Sentencing Commission sought to set in motion an "evolutionary process," of which the policy statements were only the first step. See id. Ch. 7, Part A5. After monitoring and evaluating feedback from judges, probation officers, and practitioners, the Sentencing Commission expected to promulgate formal revocation guidelines. See id.

To date, the Commission has still not issued guidelines concerning the revocation of supervised release. Nor has the Commission altered its view that the Chapter Seven policy statements are merely advisory.

Although Schwegel argues that the 1994 amendment that added 18 U.S.C. S3553(a)(4)(B) made the sentencing ranges in U.S.S.G. S7B1.4 mandatory, it is apparent that this was not Congress's intent. The 1994 amendment was proposed by the Sentencing Commission, see 136 Cong. Rec. S14894-95 (daily ed. Oct. 10, 1990), which continues to view those ranges as merely providing guidance and as the first step in an evolutionary process. We do not think that Congress, in adopting an amendment recommended by the Commission, meant to overrule the Commission's view that it was premature to require rigid adherence to the U.S.S.G. S7B1.4 ranges.

The legislative history shows that the 1994 amendment, which was initially proposed by the Commission in 1990, had a different purpose. As the then-Chairman of the Commission, Fourth Circuit Judge William W. Wilkins, Jr., explained in a letter to Senator Strom Thurmond, the purpose of the amendment was to make it clear that resentencing for probation and supervised release violations should be based "upon sentencing guidelines and policy statements issued by the Commission specifically for that purpose," rather than upon the guidelines applicable to the initial sentencing. See 136 Cong. Rec. S14894-95. This was necessitated by United States v. Smith, 907 F.2d 133 (11th Cir. 1990), in which the Eleventh Circuit had held that the guideline range applicable to the initial sentencing decision also constrains the court when it revokes probation. Judge Wilkins explained:

> [T]o the extent this view of the law is sustained, it will impede Commission plans to implement a system of policy statements for revocation decisions, preparatory to issuing guidelines for revocation at a future date. Toward this end, the Commission has just approved a

set of policy statements to guide courts in making decisions regarding the revocation of probation and supervised release and plans to distribute th[e]m in the next several weeks. The Eleventh Circuit decision in Smith would appear, however, effectively to block courts in that circuit from using these policy statements for probation revocation decisions.

6

The attached proposed legislative change modifies the statutory language upon which the Eleventh Circuit rested its decision to promote an interpretation that is consistent with Congressional intent under the Sentencing Reform Act. It specifically references the guidelines or policy statements issued by the Commission under [2]8 U.S.C. S994(a)(3) to remove any doubt that these pronouncements -- not those applicable to initial sentencing decisions -- are the appropriate reference for revocation purposes.

136 Cong. Rec. S14895.

The bill proposed by the Sentencing Commission was not enacted in 1990 and was reintroduced by Senator Thurmond in 1991 and 1993. Senator Thurmond stated that the legislation had been "suggested to me by the U.S. Sentencing Commission" and explained its purpose as follows:

[T]his bill provides that decisions to revoke supervised release should be based upon sentencing guidelines and policy statements issued by the Commission specifically for that purpose. The effect of this change would be to settle a split among the Federal courts on the issue of whether the guidelines applicable to initial sentencing of defendants also apply to probation revocation decisions.

137 Cong. Rec. S7769-70 (daily ed. June 13, 1991). Senator Thurmond added that the bill would require that, in choosing an appropriate sentence for a violation of probation, "the court's discretion would be guided by any guidelines or policy statements issued by the Sentencing Commission expressly to govern probation revocation" rather than by the guideline range for the defendant's original sentencing. 139 Cong. Rec. S2150 (daily ed. Feb. 25, 1993). It therefore seems clear that Congress did not enact 18 U.S.C. S3553(a)(4)(B) for the purpose of making the sentencing ranges set out in Chapter Seven policy statements mandatory.

Schwegel cites one passage in the legislative history as supporting his position. Referring to a predecessor of the bill that was ultimately enacted, Senator Thurmond said

that it was intended to "make more explicit the intent of Congress in the Sentencing Reform Act that, when revoking a probationary sentence, the guideline range operative at the time the defendant was sentenced to probation is no longer applicable; rather the court is constrained only by the maximum statutory penalties for the offense and any Sentencing Commission guidelines or policy statements specifically applicable to probation revocation." 137 Cong. Rec. S7770 (1991) (statement of Senator Thurmond) (emphasis added). However, this statement does not persuade us that Congress meant to require the imposition of a sentence within the ranges set out in U.S.S.G. S7B1.4. There is no question that under 18 U.S.C. S3553(a)(4), a sentencing court must "consider" the range set out in U.S.S.G. S7B1.4; and therefore, to that extent, the sentencing court is, as Senator Thurmond stated, "constrained" by U.S.S.G. S7B1.4. We are not persuaded that Senator Thurmond's statement was intended to suggest anything more.

The Second, Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits have issued published decisions rejecting the argument that Schwegel now advances. See United States v. Hale, 107 F.3d 526 (7th Cir. 1997); United States v. Cohen, 99 F.3d 69 (2d Cir. 1996), cert. denied, 117 S.Ct. 1699 (1997); United States v. Hurst, 78 F.3d 482 (10th Cir. 1996); United States v. Hofierka, 83 F.3d 357 (11th Cir. 1996), cert. denied sub nom. Andrews v. United States, 117 S.Ct. 717 (1997); United States v. Escamilla, 70 F.3d 835 (5th Cir. 1995), cert. denied, 116 S.Ct. 1368 (1996); United States v. Carr, 66 F.3d 981 (8th Cir. 1995); United States v. West, 59 F.3d 32 (6th Cir.), cert. denied, 116 S.Ct. 486 (1995). We agree with these decisions. To the extent that United States v. Plunkett, 94 F.3d 517 (9th Cir. 1996) reaches a different conclusion, we respectfully disagree. We therefore hold that the district court was not required to sentence Schwegel to a sentence within the range set out in U.S.S.G. S7B1.4.

Schwegel argues that, even if this is so, the district court nevertheless abused it discretion by failing to give adequate consideration to the policy statement range. We do not agree. The court noted that the policy statement called for

a sentence of six to twelve months, but the court decided that a longer sentence was necessary in order to give Schwegel sufficient time in custody to recover from his drug addiction. See App. at 42a. We review the district court's decision to exceed the policy statement range under an abuse of discretion standard. See, e.g., Hofierka, 83 F.3d at 361-62. We conclude that the district court properly considered the policy statement sentencing range and properly exercised its discretion.

For these reasons, we affirm the judgment of the district court.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit